UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YING YU LIU, YUE HE WU, NING LIU, LE ZHEN JIANG, HONG CHEN, XIE HUI WU, SHUN LING TANG, MENG XIANG LIN, WU LIN, and ZI QIN GUO, | |
| Plaintiffs, | **<u>ORDER</u>** |
| - against - | 19 Civ. 410 (PGG) |
| CHAD WOLF, Acting Secretary of Department of Homeland Security, L. KENNETH T. CUCCINELLI, Senior Official Performing the Duties of the Director, U.S. Citizenship and Immigration Services, and PATRICIA MENGES, Director, U.S. Citizenship and Immigration Services, New York Asylum Office, | |
| Defendants. | |

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiffs Ying Yu Liu, Yue He Wu, Ning Liu, Le Zhen Jiang, Hong Chen, Xie

Hui Wu, Shun Ling Tang, Meng Xiang Lin, Wu Lin, and Zi Quin Guo (collectively "Plaintiffs")

filed this mandamus action on January 15, 2019, seeking to compel the Secretary of the

Department of Homeland Security, the Director of U.S. Citizenship and Immigration Services

("USCIS"), and the Director of USCIS's New York Asylum Office to schedule asylum

interviews for Plaintiffs and adjudicate their asylum applications.[1]  (Cmplt. (Dkt. No. 1))

Plaintiffs' asylum applications – filed between August and November 2015 – are premised on

---

[1]  Chad Wolf is now the Acting Secretary of the Department of Homeland Security, and he is automatically substituted as a defendant pursuant to Federal Rule of Civil Procedure 25(d). Kenneth Cuccinelli is now the Senior Official Performing the Duties of the Director, USCIS, and he is likewise automatically substituted as a defendant.

claims of forced sterilization, forced abortion, and religious persecution that Plaintiffs allegedly suffered in China.  Plaintiffs complain that Defendants have not adjudicated Plaintiffs' asylum applications within a reasonable time.  The Complaint alleges claims under the Administrative Procedure Act (the "APA"), codified in relevant part at 5 U.S.C. §§ 555(b), 706(1); the agency mandamus statute, 28 U.S.C. § 1361; the federal question statute, 28 U.S.C. § 1331; the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1158(a); and 8 C.F.R. § 208.9(a).

Defendants have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  (Def. Mot. (Dkt. No. 8)  For the reasons stated below, Defendants' motion will be granted.

## BACKGROUND

Plaintiffs are citizens of the People's Republic of China.  After they arrived in the United States, Plaintiffs filed asylum applications for themselves as well as for certain relatives.

Plaintiff Ying Yu Liu filed an asylum application on August 24, 2015; her daughter is listed as a derivative applicant.  Plaintiff Ying Lu Liu alleges that the Chinese government forcibly sterilized her in March 2004.  (Cmplt. (Dkt. No. 1) ¶¶ 7, 20)

Plaintiff Yue He Wu filed an asylum application on August 3, 2015; her husband and son are listed as derivative applicants.  Plaintiff Yue He Wu alleges that the Chinese government forcibly sterilized and fined her in March 1997.  (Id. ¶¶ 8, 21)

Plaintiff Ning Liu filed an asylum application on August 17, 2015.  She alleges that the Chinese government forcibly sterilized her and fined her in February 2013.  (Id. ¶¶ 9, 22)

Plaintiff Le Zhen Jiang filed an asylum application on August 10, 2015; her husband is listed as a derivative applicant.  Plaintiff Le Zhen Jiang alleges that the Chinese government forcibly sterilized and fined her in July 1993.  (Id. ¶¶ 10, 23)

Plaintiff Hong Chen filed an asylum application on October 8, 2015.  She alleges that the Chinese government forcibly aborted her pregnancy, forcibly sterilized her, and fined her in February 1999.  (Id. ¶¶ 11, 24)

Plaintiff Xie Hui Wu filed an asylum application on September 29, 2015; her husband and son are listed as derivative applicants.  Plaintiff Xie Hui Wu alleges that the Chinese government forcibly aborted her pregnancy in August 2014.  (Id. ¶¶ 12, 25)

Plaintiff Shun Ling Tang filed an asylum application on November 24, 2015.  She alleges that the Chinese government forcibly aborted her pregnancy and fined her in May 2011, and that she fears persecution and forced sterilization because she is a Christian.  (Id. ¶¶ 13, 26)

Plaintiff Meng Xiang Lin filed an asylum application on August 21, 2015; her two sons are listed as derivative applicants.  Plaintiff Meng Xiang Lin alleges that in June 2012 and September 2013 the Chinese government forcibly aborted two of her pregnancies.  (Id. ¶¶ 14, 27)

Plaintiff Wu Lin filed an asylum application on October 6, 2015.  He alleges that in August 2014 the Chinese government persecuted him for being a Christian.  (Id. ¶¶15, 28)

Plaintiff Zi Qin Guo filed an asylum application on October 22, 2015.  He alleges that in September 2014 the Chinese government persecuted him for being a Christian.  (Id. ¶¶ 16, 29)

Plaintiffs contend that on January 31, 2018, USCIS announced a new scheduling procedure for asylum cases called "last in, first out."  The new policy prioritizes "applications that were scheduled for an interview but had to be rescheduled"; "applications that have been

pending 21 days or less" will be considered next; then, "all other pending affirmative asylum applications, starting with newer filings and working back toward older filings" will be considered.  (Id. ¶ 30)

> Plaintiffs complain that the USCIS's new policy
>
> creates an indefinite wait for those [applicants] who filed least recently.  This certainly causes an unreasonable delay in the adjudication of Plaintiffs' Applications.  For individuals who have already filed asylum applications and have been waiting months or years to have their asylum interview scheduled, there is no time frame for when their asylum interviews will be scheduled.  Although Plaintiffs are allowed to stay in the United States during this delay, Plaintiffs are denied permanent immigration status and the various benefits that attach to permanent status.

(Id. ¶¶ 31-33 (emphasis in original))

Plaintiffs further contend that (1) "the Immigration and Nationality Act [§ 208(a)] provides asylum seekers with the right to apply for asylum" and "a clear right to a decision on their asylum applications"; (2) the Administrative Procedure Act ("APA") (5 U.S.C. § 555(b)) "requires USCIS to carry out its duties within a reasonable time frame"; and (3) USCIS and the Department of Homeland Security are required to adjudicate applications pursuant to 8 C.F.R. § 208.9(a).[2]  (Id. ¶¶ 35-40)  Given the "unreasonable" delay in adjudicating Plaintiffs' asylum applications, Plaintiffs seek an order "[c]ompel[ling] the Defendants and those acting under them to perform their duties" "pursuant to 28 U.S.C. § 1361 (mandamus)."  (Id. ¶ 45-46; id. at 12; id. ¶ 2)

---

[2]  8 C.F.R. § 208.9, "Procedure for interview before an asylum officer," provides in subsection (a) that "[USCIS] shall adjudicate the claim of each asylum applicant whose application is complete within the meaning of § 208.3(c)(3) and is within the jurisdiction of [USCIS]."  8 C.F.R. § 208.9(a); 8 C.F.R. § 1.2.

## DISCUSSION

## I.   LEGAL STANDARDS

### A.   Rule 12(b)(1) Standard

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([i.e.,] subject-matter jurisdiction). . . ." Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

Where subject matter jurisdiction is challenged, a plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (quoting Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003)); see also Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005) (citing Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002)) ("The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."). And "[u]nder Rule 12(b)(1), even 'a facially sufficient complaint may be dismissed for lack of subject matter jurisdiction if the asserted basis for jurisdiction is not sufficient.'" Castillo v. Rice, 581 F. Supp. 2d 468, 471 (S.D.N.Y. 2008) (quoting Frisone v. Pepsico Inc., 369 F. Supp. 2d 464, 469 (S.D.N.Y. 2005)) (citations omitted).

In considering a Rule 12(b)(1) motion, a court "must accept as true all material factual allegations in the complaint." J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004). The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements

contained in the affidavits." Id.; see also Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd, 561 U.S. 247 (2010) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." (citing Makarova, 201 F.3d at 113)). In resolving a Rule 12(b)(1) motion, a court may also "consider 'matters of which judicial notice may be taken.'" Greenblatt v. Gluck, No. 03 Civ. 597 RWS, 2003 WL 1344953, at *1 n.1 (S.D.N.Y. Mar. 19, 2003) (quoting Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993)).

"A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016); see also Katz v. Donna Karan Co., L.L.C., 872 F.3d 114, 119 (2d Cir. 2017) (citing Carter, 822 F.3d 47 (2d Cir. 2016). A "facial" Rule 12(b)(1) motion is "based solely on the allegations of the complaint or the complaint and exhibits attached to it." Carter, 822 F.3d at 56. A plaintiff opposing a "facial" motion bears "no evidentiary burden," and the court's task "is to determine whether the [complaint and its exhibits] 'allege facts that affirmatively and plausibly suggest [a basis for the exercise of subject matter jurisdiction].'" Id. (quoting Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). In making that determination, a court must "'accept[] as true all material [factual] allegations of the complaint' and 'draw[ ] all reasonable inferences in favor of the plaintiff.'" Id. at 57 (quoting Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003).

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [complaint and its exhibits]." Id. at 57; see also MMA Consultants 1, Inc. v. Rep. of Peru, 719 F. App'x 47, 49 (2d Cir. 2017) (summary order) (in a fact-based Rule 12(b)(1) motion, "the defendant puts forward evidence to challenge the factual

contentions underlying the plaintiff's assertion of subject-matter jurisdiction").  "In opposition to such a motion, plaintiffs must come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on the allegations in the[ir p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show [a basis for the exercise of subject matter jurisdiction]."  Katz, 872 F.3d at 119 (internal citations and quotations omitted).  Where a defendant supports his fact-based Rule 12(b)(1) motion with "material and controverted" "extrinsic evidence," a "district court will need to make findings of fact in aid of its decision as to" subject matter jurisdiction.  Carter, 822 F.3d at 57. S

Here, Defendants make a fact-based Rule 12(b)(1) motion, because they have submitted a declaration in support of their motion that describes the USCIS's processes for resolving asylum applications, why these processes are used, and the reasons why delays occur. (Lafferty Decl. (Dkt. No. 9))

### B.    Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "factual allegations sufficient 'to raise a right to relief above the speculative level.'"  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In other words, the complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'"  Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In applying this standard, a court accepts as true all well-pleaded factual allegations but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Id. Moreover, a court will give "no effect to legal conclusions couched as factual allegations." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). When a court can infer no more than the mere possibility of misconduct from the factual averments – in other words, where the well-pled allegations of a complaint have not "nudged [plaintiff's] claims across the line from conceivable to plausible" – dismissal is appropriate. Twombly, 550 U.S. at 570.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). For documents to be incorporated by reference, "the complaint must make 'a clear, definite and substantial reference to the documents.'" DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003)).

## II.   ANALYSIS

Defendants argue that Plaintiffs' claims should be dismissed pursuant to (1) Rule 12(b)(1), because the Court lacks subject matter jurisdiction under either the agency mandamus statute or the APA; and (2) Rule 12(b)(6), because Plaintiffs' complaint about the delay in

processing their asylum applications fails to state a claim. (Def. Br. (Dkt. No. 10); Def. Reply (Dkt. No. 11))

Plaintiffs assert, however, that 28 U.S.C. § 1361 – the agency mandamus statute – "expressly grants this Court jurisdiction to hear Plaintiffs' Complaint for Declaratory Relief in the Form of Mandamus," because Plaintiffs have a "clear right to relief," Defendants have a "clear, non-discretionary duty to act," and "there is no other adequate remedy at law." (Pltf. Br. (Dkt. No. 12) at 1-2) Plaintiffs contend that "where there is a right to apply for a benefit, there is a right to receive a decision on the application. . . . The APA requires USCIS to carry out its duties within a reasonable time. . . . Defendants[] have a duty to act and this duty is mandatory." (Id. at 2-3)

A.    **Relevant Statutory Provisions**

1.    **The Immigration and Naturalization Act**

The INA permits any alien "who is physically present in the United States or who arrives in the United States . . . irrespective of such alien's status" to apply for asylum in this country.[3]  8 U.S.C. § 1158(a)(1). The Secretary of Homeland Security or the Attorney General "may grant asylum to an alien who has applied for asylum in accordance with the requirements and procedures established by the Secretary of Homeland Security or the Attorney General under this section if the Secretary of Homeland Security or the Attorney General determines that such alien is a refugee within the meaning of [S]ection 1101(a)(42)(A) of this title."  8 U.S.C. § 1158(b)(1)(A). The INA directs the Asylum Division of USCIS to establish procedures by which an initial interview or hearing on an asylum application ordinarily would be conducted within 45 days after the alien files such an application.  8 U.S.C. § 1158(d)(5)(A)(ii) ("[I]n the

_____

[3]  Exceptions set forth in the statute are not applicable here.  See 8 U.S.C. § 1158(a)(2).

absence of exceptional circumstances, the initial interview or hearing on the asylum application

shall commence not later than 45 days after the date an application is filed.").  The INA also

directs the Asylum Division to complete adjudication of an asylum application within 180 days

of its filling.  8 U.S.C. § 1158(d)(5)(A)(iii) ("[I]n the absence of exceptional circumstances, final

administrative adjudication of the asylum application, not including administrative appeal, shall

be completed within 180 days after the date an application is filed. . . .").  Aliens may seek

asylum either affirmatively, before USCIS, or defensively, during removal proceedings in

immigration court.  8 C.F.R. §§ 208.2, 1208.2.

      The INA also provides, however, that "[n]othing in [Section 1158(d)] shall be

construed to create any substantive or procedural right or benefit that is legally enforceable by

any party against the United States or its agencies or officers or any other person."  8 U.S.C.

§ 1158(d)(7).

### 2.      <u>The Federal Question Statute</u>

      The federal question statute, 28 U.S.C. § 1331, provides that "[t]he district courts

shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties

of the United States."  28 U.S.C. § 1331.  "'An action arises under a federal statute where the

statute creates or is a necessary element of the cause of action or the plaintiff would prevail if the

statute were construed one way and lose if it were construed another.'"  <u>Nigmadzhanov v.</u>

<u>Mueller</u>, 550 F. Supp. 2d 540, 543 (S.D.N.Y. 2008) (internal citations omitted) (quoting <u>Kim v.</u>

<u>Ashcroft</u>, 340 F. Supp. 2d 384, 388 (S.D.N.Y. 2004)).  "'This has been interpreted to mean that

federal question jurisdiction exists where:  (1) the claim turns on an interpretation of the laws or

Constitution of the United States and (2) the claim is not patently without merit.'" Id. (internal citations omitted) (quoting Kim, 340 F. Supp. 2d at 388).

### 3.      The Administrative Procedure Act

The APA, standing alone, does not confer jurisdiction on a district court to review an administrative agency's decision. Califano v. Sanders, 430 U.S. 99, 105-07 (1977); Nigmadzhanov, 550 F. Supp. 2d at 543. However, "[t]he APA in conjunction with the federal question statute, 28 U.S.C. § 1331, may provide a jurisdictional basis." Nigmadzhanov, 550 F. Supp. 2d at 543 (quoting Bondarenko v. Chertoff, No. 07-mc-00002, 2007 WL 2693642, at *2 (W.D.N.Y. Sept. 11, 2007) (internal citations and quotations omitted)). For example, when a plaintiff alleges that a defendant violated the APA, a court may exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Id. ("[P]laintiffs seeking specific relief are given the right to sue the government in a federal court by the [APA] but the subject matter jurisdiction basis is the federal question statute. . . . Thus, when a plaintiff alleges that the defendant violated the APA, the court may exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1331." (internal quotations and citations omitted)).

Here, the relevant provisions of the APA are (1) 5 U.S.C. § 555(b), which states that, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter

presented to it"; and (2) 5 U.S.C. § 706(1), which states that a court reviewing agency action

shall "compel agency action unlawfully withheld or unreasonably delayed."

      **B.**    **Plaintiffs' Claims Under the APA**

            **1.**    **Whether this Court Has Subject Matter**
                      **Jurisdiction Over Plaintiffs' Claims Under the APA**

The Government contends that the INA, 8 U.S.C. § 1158(d)(7), explicitly bars

any suit arising from USCIS's failure to meet the timelines set forth in Section 1158(d)(5)(A).

(Def. Br. (Dkt. No. 10) at 21)  As discussed above, Section 1158(d)(7) states that "[n]othing in

[Section 1158(d)] shall be construed to create any substantive or procedural right or benefit that

is legally enforceable by any party against the United States or its agencies or officers or any

other person." 8 U.S.C. § 1158(d)(7). "[T]he judicial review provisions of the APA do not apply

'to the extent that . . . statutes preclude judicial review.'" Shabaj v. Holder, 718 F.3d 48, 52 (2d

Cir. 2013) (per curiam) (quoting 5 U.S.C. § 701(a)(1)).

In the Complaint, however, Plaintiffs do not invoke the timelines set forth in the

INA.  Plaintiffs' claim is instead premised on the USCIS's alleged failure to "carry out its duties

within a reasonable time," as required by 5 U.S.C. § 555(b) of the APA.  (Cmplt. (Dkt. No. 1)

¶ 5; see also id. ¶¶ 2, 36-38)  As noted above, Section 555(b) of the APA states that, "[w]ith due

regard for the convenience and necessity of the parties or their representatives and within a

reasonable time, each agency shall proceed to conclude a matter presented to it," 5 U.S.C. §

555(b), and Section 706(1) of the APA states that a reviewing court shall "compel agency action

unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).  (See Cmplt. (Dkt. No. 1) ¶¶

5, 36, 38, 42, 45-46)

Courts in this Circuit have rejected the Government's argument that the no private

right of action provision set forth in the INA, 8 U.S.C. § 1158(d)(7), strips aliens of any right to

challenge agency delays in processing asylum requests, no matter how long those delays may be. See, e.g., Xu v. Cissna, No. 19 Civ. 2584 (KPF), 2020 WL 240839, at *5 (S.D.N.Y. Jan. 16, 2020) ("Plaintiff's right to adjudication within a reasonable time exists independently of § 1158(d), and the Court concludes that § 1158(d)(7) is not so broad as to strip Plaintiff of her right to challenge all delays in the adjudication of her asylum application, no matter how egregious."); Pesantez v. Johnson, No. 15 Civ. 1155(BMC), 2015 WL 5475655, at *4 (E.D.N.Y. Sept. 17, 2015) ("The conclusion that no relief is available to plaintiff via the Mandamus Act does not end the inquiry, because I must also consider her allegations of agency inaction under the Administrative Procedure Act, which provides individuals with a cause of action when agency adjudication has been unreasonably delayed.")

The Court concludes that it has subject matter jurisdiction to consider Plaintiffs' claims under the APA.

## 2.      Whether Plaintiffs State a Claim Under the APA

The APA provides for judicial review of an agency action that is either not completed "within a reasonable time" or is "unreasonably delayed."  5 U.S.C. §§ 555(b), 706(1). "In determining reasonableness, [courts] look to the source of delay – e.g., the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding."  Reddy v. Commodity Futures Trading Comm'n, 191 F.3d 109, 120 (2d Cir. 1999). Courts also consider the six factors set forth in Telecomms. Research and Action Ctr. v. FCC ("TRAC"), 750 F.2d 70, 80 (D.C. Cir. 1984) (the "TRAC factors"):

> (1) the time agencies take to make decisions must be governed by a "rule of reason," . . . (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason, . . . (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake, . . . (4) the court should consider the effect

of expediting delayed action on agency activities of a higher or competing priority, . . . (5) the court should also take into account the nature and extent of the interests prejudiced by delay, . . . and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

TRAC, 750 F.2d at 80.

Here, Plaintiffs filed their asylum applications in 2015, and they are still waiting for a decision.

"The Supreme Court has held[, however,] that evidence of the passage of time cannot, standing alone, support [a claim for unreasonably delayed administrative action]." Espin v. Gantner, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) (citing INS v. Miranda, 459 U.S. 14, 19 (1982)). "Rather, '[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court.'" Xu, 2020 WL 240839, at *5 (quoting Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003)).

Here, Plaintiffs contend that the delay in adjudicating their asylum applications is due to the USCIS's adoption of a "last in, first out" ("LIFO") policy in scheduling affirmative asylum cases.  (Cmplt. (Dkt. No. 1) ¶ 30)  According to Plaintiffs, this policy sets

> [t]he first priority for scheduling cases [as] applications that were scheduled for an interview but had to be rescheduled.  The second priority will be applications that have been pending 21 days or less.  Finally, the third priority will be all other pending affirmative asylum applications, starting with newer filings and working back towards older filings.
>
> Currently, each asylum office receives more asylum applications than it is able to schedule for interviews.  This means that, in addition to not being able to keep up with scheduling asylum interviews for newly filed applications, this policy creates an indefinite wait for those who filed least recently. This certainly causes an unreasonable delay in the adjudication of Plaintiffs' Applications.

> For individuals who have already filed asylum applications and have been waiting months or years to have their asylum interview scheduled, there is no time frame for when their asylum interviews will be scheduled.

(Id. ¶¶ 30-32)

The LIFO rule was adopted by the USCIS on January 31, 2018.  (Id. ¶ 30)

However, USCIS and its predecessor, the Immigration and Naturalization Services ("INS"),

followed a LIFO policy from 1994 to 2014.  (Def. Br. (Dkt. No. 10) at 14) (citing Lafferty Decl.

(Dkt. No. 9) ¶ 18)  Because individuals who have pending affirmative asylum applications are

eligible for certain types of employment authorization documents, USCIS was concerned about

"the incentive engendered by [an application] backlog to file fraudulent or otherwise non-

meritorious asylum claims just to obtain work authorization," and instituted the LIFO policy in

part to reduce that incentive.  (Lafferty Decl. (Dkt. No. 9) ¶ 18)  Although initially use of the

LIFO system resulted in a reduction in the backlog of asylum applications (Lafferty Decl. (Dkt.

No. 9) ¶ 19), in 2013 and 2014 an increase in the other types of cases the Asylum Division

processes led to an increased backlog in asylum applications, and

> the effectiveness of the LIFO scheduling system in discouraging frivolous, fraudulent or otherwise non-meritorious filings was undermined while older cases remained pending for longer periods of time.  Consequently, in December 2014, the agency decided to temporarily adopt a "first-in-first-out" (FIFO) scheduling system under which the Asylum Division prioritized cases for interviews in the order in which they were filed with the agency.

(Id. ¶ 22; see also ¶¶ 20-21)

USCIS found, however, that the FIFO policy led to "backlogs of frivolous,

fraudulent or otherwise non-meritorious asylum applications filed solely to obtain work

authorization."  (Id. ¶ 23)  Accordingly, USCIS reinstituted the LIFO policy in 2018 to "slow[]

the growth of the pending application caseload and [to assist in] efficient[] processing [of] all

pending asylum application[s] by eliminating the incentive to file frivolous, fraudulent or

otherwise non-meritorious asylum applications solely to obtain employment authorization."  (Id. ¶ 26)  The agency also "increased the number of authorized Asylum Officer positions from 273 in 2013[] to 724 in 2019. . . . With these additional resources, the Asylum Division has been able to more efficiently adjudicate affirmative asylum cases.  In FY 2018, the Asylum Division was able to adjudicate 82,000 cases compared to 30,620 cases in FY 2014."  (Id. ¶ 28)  The Asylum Division "is aiming to virtually eliminate the backlog of cases pending more than 6 months by 2024."  (Id. ¶ 32)

While Plaintiffs await the adjudication of their asylum applications, they have been granted an Employment Authorization Document ("EAD").  (Id. ¶ 30)

The Court concludes that the delayed adjudication of Plaintiffs' asylum applications, while regrettable, is not the product of a lack of diligence by either Plaintiffs or Defendants.  "Rather, the delay was the result of the LIFO rule, which was itself a reasoned response to a systemic crisis."  Xu, 2020 WL 240839, at *6.

As to the TRAC factors, this Court must first consider whether the agency's use of the LIFO policy reflects adherence to a "rule of reason."  TRAC, 750 F.2d 70, 80 (D.C. Cir. 1984).  The record indicates that USCIS employs the LIFO policy, including its three priority levels, to guide its adjudication of asylum applications.  Defendants have set forth reasons for the use of the LIFO system, and Plaintiffs do not argue that the LIFO rule itself is unreasonable, or that it does not serve the purposes identified by Defendants.  Given this record, this Court cannot find that the LIFO policy does not constitute a "rule of reason."  See Xu, 2020 WL 240839 at *6 ("the Court finds that the LIFO rule constitutes a rule of reason that satisfies the first TRAC factor" (citing Zhu v. Cissna, No. 18 Civ. 9698 (JRP), 2019 WL 3064458, at *4 (C.D. Cal. Apr.

22, 2019) (finding that the LIFO rule "sets forth a 'rule of reason' for the adjudication of asylum applications")).

The second TRAC factor asks whether Congress has provided a timetable that "may supply content for this rule of reason." TRAC, 750 F.2d at 80.  Congress provided a timetable for asylum application adjudications in 8 U.S.C. § 1158(d).  That timetable contemplates an initial interview or hearing no later than 45 days after the application filing date, and a final adjudication within 180 days of filing, absent exceptional circumstances.  8 U.S.C. § 1158(d)(5)(ii)-(iii).  But Congress also chose to provide that this timeline would not be mandatory.  As discussed above, 8 U.S.C. § 1158(d)(7) provides that "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."  8 U.S.C. § 1158(d)(7).  Given Congress's decision that the schedule it set forth would not be binding, this Court cannot give that schedule binding effect here.  See Xu, 2020 WL 240839 at *6 ("Th[e] timetable [laid out in § 1158(d)], however, is not mandatory:  Congress stated that it did not create any substantive or procedural right to adjudication within any time period.  8 U.S.C. § 1158(d)(7).  Thus, the Court does not ascribe much significance to this timetable.").

The third and fifth TRAC factors require the Court to examine the nature of the interests prejudiced by delayed agency adjudication.  Plaintiffs allege that "[a]lthough the Plaintiffs are allowed to stay in the United States during this delay, Plaintiffs are denied permanent immigration status and the various benefits that attach to permanent status."  (Cmplt. (Dkt. No. 1) ¶ 33)  However, "this sort of prejudice is inherent in the asylum application process; worthy applicants are not entitled to benefits until their applications have been assessed and

17

approved."  Xu, 2020 WL 240839 at *6 (citing Zhu, 2019 WL 3064458, at *4).  Plaintiffs have

not pled facts demonstrating a risk to human health and welfare resulting from the delay.

[Plaintiffs are permitted to remain in the United States during the pendency of their asylum

application proceedings, and each has received an Employment Authorization Document.  See

Lafferty Decl. (Dkt. No. 9) ¶ 30)

        The fourth TRAC factor requires the Court to "consider the effect of expediting

delayed action on agency activities of a higher or competing priority."  TRAC, 750 F.2d at 80.

Here, Plaintiffs do not argue that applications of similarly situated applicants have received more

expedited treatment.  And were this Court to grant Plaintiffs the relief they seek, Plaintiffs would

simply move to the "head of the line," leapfrogging other asylum applicants, and undermining

USCIS's reasons for implementing the LIFO system:

> [L]eapfrogging Plaintiff['s'] application[s] to the front of the line would do
> nothing to cure the deficiencies of the asylum application process; it would only
> harm other applicants, who are equally deserving of prompt adjudication. . . .
> [G]ranting Plaintiff[s their] requested relief would have two other undesirable
> effects.  First, it would undermine USCIS's ability to achieve the goal that
> motivated it to adopt the LIFO rule – specifically, to address the surge in newly-
> filed asylum applications that could leave the asylum system "increasingly
> vulnerable to fraud and abuse." . . . [S]econd, granting relief to Plaintiff[s],
> [asylum petitioners] who [have] engaged the help of legal counsel to bring this
> suit, might have the perverse effect of "incentiviz[ing] defendants to prioritize
> those asylum applicants who have the wherewithal to retain private counsel and to
> bring suit in District Court."

Xu, 2020 WL 240839 at *7 (quoting Peseantz, 2015 WL 547655, at *4) (emphasis omitted); see

also Xu v. Nielsen, No. 18 Civ. 2048(BMC), 2018 WL 2451202, at *2 (E.D.N.Y. May 31, 2018)

("[T]he competing-priority issue is weighty.  There are many other applicants who have waited

even longer than plaintiff; to grant him priority is to push them further back in line when the only

difference between them is that plaintiff has brought a federal lawsuit.  That factor should not

give him any advantage . . . .").

Having considered the <u>TRAC</u> factors and the cause of the delayed adjudication, the Court finds that Plaintiffs have not pled facts demonstrating that the adjudication of their asylum applications has been unreasonably delayed.  The approximately three-year period between the filing of Plaintiffs' asylum applications and the filing of the Complaint, while not insignificant, is "well within the range of time that other courts have found does not constitute unreasonable delay."  <u>Xu</u>, 2020 WL 240839, at *7 (collecting cases).

### C.   <u>Plaintiffs' Claims Under the Mandamus Act</u>

Plaintiffs also contend that they are entitled to relief under the Mandamus Act, 28 U.S.C. § 1361, which provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.

The Mandamus Act empowers the federal courts to compel government officials to carry out "ministerial" duties.  <u>Work v. United States ex rel. Rives</u>, 267 U.S. 175, 177 (1925). "The action that the plaintiff seeks to compel must be subject to positive command, plainly described, and free from doubt."  <u>Keane v. Chertoff</u>, 419 F. Supp. 2d 597, 599 (S.D.N.Y. 2006) (internal quotation marks and citation omitted).  To obtain relief under the Mandamus Act, plaintiff must show that "(1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available."  <u>Benzman v. Whitman</u>, 523 F.3d 119, 133 (2d Cir. 2008).  The court's authority to grant the requested relief depends on the nature of the duty sought to be compelled:  relief "will issue only to compel the performance of a 'clear nondiscretionary duty.'" <u>Pittston Coal Group v. Sebben</u>, 488 U.S. 105, 121 (1988) (quoting <u>Heckler v. Ringer</u>, 466 U.S. 602, 616 (1984)).

Whether this Court looks to the time periods set forth in 8 U.S.C. § 1158(d) or the "reasonable" time referenced in the APA, Plaintiffs' application for mandamus fails. As discussed above, Plaintiffs have not demonstrated that the delay in resolving their asylum applications violates the APA's requirement that agency action be completed "within a reasonable time." Moreover, because "an alternative adequate remedy [is] possible under the APA," mandamus relief is not available. See Xu, 2020 WL 240839, at *8; Sharkey v. Quarantillo, 541 F.3d 75, 93 (2d Cir. 2008) (mandamus claim should be dismissed where it duplicates claims brought under the APA).

As to enforcement of the time periods set forth in 8 U.S.C. § 1158(d), Plaintiffs contend that "Defendants [] have a clear, non-discretionary duty to act. . . . 8 U.S.C. § 1158(d)(7) does not preclude a finding that a duty is owed. . . . [I]t does not strip this court of subject matter jurisdiction or preclude judicial review. . . . Courts have found that USCIS has a mandatory duty to adjudicate an application." (Pltf. Br. (Dkt. No. 12) at 2-3 (internal citations and quotations omitted))

Defendants do not contend that they have no duty to adjudicate Plaintiffs' asylum applications, however. Instead, Defendants contend – and the Court agrees – that Section 1158(d)(7) of the INA bars Plaintiffs "from claiming any legally enforceable right to have [their] application[s] adjudicated within the provided timeframes." Xu, 2020 WL 240839, at *8 (collecting cases) (internal quotations omitted). Because Section 1158(d) does not create a legally enforceable right or benefit, Defendants "do not owe Plaintiff a duty to adjudicate her application within the time frames provided in § 1158(d)." Id. There is thus no "clear right to the relief sought." Benzman v. Whitman, 523 F.3d 119, 133 (2d Cir. 2008), and this Court lacks subject matter jurisdiction over Plaintiff's claim for mandamus relief.

## **CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss is granted.  The

Clerk of Court is directed to terminate the motion (Dkt. No. 8) and to close this case.

Dated: New York, New York
       May 30, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge